### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ID7D CO., LTD., | : | |
|     PLAINTIFF, | : | |
| | : | CIVIL ACTION NO. 3:11cv1054(VLB) |
| | : | |
|   v. | : | APRIL 13, 2012 |
| | : | |
| SEARS HOLDING CORPORATION, | : | |
| dba K-MART | : | |
| DEFENDANT. | : | |

## MEMORANDUM OF DECISION GRANTING DEFENDANT'S [DKT. #14] MOTION TO DISMISS

Before the Court is a motion to dismiss filed by the Defendant Sears Holding Corporation, dba K-Mart.  The Plaintiff, ID7D CO., LTD has brought a claim for patent and trade dress infringement against Sears.  Defendant argues that Plaintiff's patent infringement claim should be dismissed for lack of standing pursuant to Fed. R. Civ. P. 12(b)(1) and that Plaintiff's trade dress claim should be dismissed for failure to state a claim for trade dress infringement that is plausible on its face pursuant to Fed. R. Civ. P. 12(b)(6).  For the reasons stated hereafter, Defendant's motion to dismiss is granted.

### Facts as alleged in the complaint

Plaintiff alleges that it is a corporation incorporated under the laws of Taiwan and is in the business of selling a variety of products, including certain propane powered barbeque grills.  [Dkt. #1, Compl. at ¶1].  Plaintiff alleges that it is the owner of a U.S. Design Patent No.D573,399S entitled Barbeque Grill, which

issued on July 22, 2008, and is directed to the ornamental design of a barbeque grill. [*Id.*].

Plaintiff alleges that Defendant manufactures, imports, distributes, and/or sells a tabletop propane grill, under its Kmart Item No. 2616546-4, which is a portable grill. [*Id.* at ¶2]. Plaintiff alleges that Defendant's grill infringes its patent and that it has never authorized Defendant to at any time make, use, or sell any produced covered by its patent. [*Id.* at ¶¶12-13]. Plaintiff also alleges upon information and belief that Defendant had actual knowledge of the patent and its infringement of the patent has been, and continues to be, willful, wanton, malicious and deliberate. [*Id.* at ¶15].

Plaintiff alleges that it has been engaged "in interstate commerce and/or the foreign commerce of the United States by virtue of the ongoing sales of products," including its barbeque grill which is illustrated in a picture attached to the complaint as Exhibit C (the 'Infringed Product')." [*Id.* at ¶17]. Plaintiff alleges that "Defendant's copycat product is illustrated beside plaintiff's patented barbeque grill" as illustrated in a picture attached to the complaint as Exhibit D. [*Id.*]. Plaintiff also alleges that the Infringed Product "has been sold in great numbers for years and continues to be extensively sold." [*Id.* at ¶18].

Plaintiff alleges that the "sculptural and graphic design of Plaintiff's Infringed Products (hereinafter 'Trade Dress'), namely their sculptural configuration and/or other non-functional design features, is a protectable trade

dress under §43(a) of the Lanham Act, which has been infringed by Defendant." [*Id.* at ¶19].

Plaintiff alleges that its "barbeque grill includes the following elements: a shiny exterior comprised of a rounded trapezoidal shaped lid on top, with a plastic handle and a rounded trapezoidal base pan at the bottom. The entire grilling unit is secured on top of four wire chrome legs with curved feet. The lid also has three cartouche-shaped opening / cutouts in series on its left and right sides and four additional cutouts on the back arranged in parallel with two cutouts in each row. The base pan also has similar cutouts with two such openings on the left and also on the right side. The lid also has a sheet metal plate attached in the back imprinted on which, is technical information regarding the burner and its proper use." [*Id.* at ¶20]. Plaintiff also alleges that it "has used and continues to use its distinctive Trade Dress and, by virtue of widespread sales, the Trade Dress has come to indicate origin with Plaintiff." [*Id.*].

Plaintiff further alleges that through its business it has obtained a reputation of highest quality and that "[s]uch reputation has given Plaintiff and its barbeque grill and other products a pre-eminent position in the marketplace." Plaintiff alleges that Defendant's grills "are of inferior quality but include the following copied elements: a shiny exterior comprised of a rounded trapezoidal shaped lid on top, with a plastic handle and a rounded trapezoidal base pan at bottom. The entire grilling unit is secured on top of four wire chrome legs with curved feet. The lid also has three cartouche-shaped openings/cutouts in series on its left and the right sides and four additional cutouts in the back arranged in

3

parallel with two cutouts in each row.  The base pan also has similar cutouts with two such openings on the left and also on the right side.  The lid also has a sheet metal plate attached in the back imprinted on which, are technical information regarding the burner and its proper use."  [*Id.* at ¶21].

Plaintiff further alleges that it "has incurred great expense and has devoted substantial resources to make the barbeque grill famous and/or readily recognizable to consumers.  Plaintiff's investments and efforts have been successful as the Trade Dress had become highly distinctive in the marketplace and denotes to purchasers a line of goods which originate with Plaintiff."  [*Id.* at ¶23].

Lastly, Plaintiff alleges that Defendant "has used and continues to use derivatives, and/or colorable imitations of Plaintiff's Trade Dress in direct competition with Plaintiff…in a manner that is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods."  [*Id.* at ¶25].

### Legal Standard

The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are "substantively identical."  *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d. Cir. 2003).  However, on a motion to dismiss under Rule 12(b)(1), the party invoking the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof on a

4

motion to dismiss under Rule 12(b)(6).  *Id.*  In deciding both types of motions, the Court "must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the plaintiff."  *In re AIG Advisor Group Sec. Litig.*, 309 Fed. App'x. 495, 497 (2d Cir. 2009).  "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted).  While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (internal quotations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

The Court's review on a motion to dismiss pursuant to Rule 12(b)(6) is generally limited to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  In addition, the Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."  *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).  In deciding a motion to dismiss for lack of subject matter jurisdiction under Rule

12(b)(1), however, the Court "may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits." *State Employees Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007).

<u>Analysis of Patent Infringement Claim</u>

Defendant argues that Plaintiff does not have standing to bring a patent infringement claim because it is not the patentee and owner of all rights under the United States Patent No. D573,399S.  Defendant indicates that the copy of the patent which is attached as an exhibit to the complaint states that the patentee of record is Mr. Kiosky Chung and that no assignee of record is indicated on the face of the patent.  *See* [Dkt. #1, Compl. Ex. A].  Defendant further argues that the complaint does not allege that Mr. Chung assigned his rights in the patent to Plaintiff.

Plaintiff argues that it has adequately alleged that it is the owner of the patent in the complaint and asserts without citation to any caselaw that "the chain of title to a patent is a matter of proof.  As such, it may be challenged on summary judgment, but not by way of a motion to dismiss."  [Dkt. #22, Pl. Mem. at p. 3].  In its opposition memorandum, Plaintiff also attaches a copy of the assignment of the subject patent which was executed on November 1, 2011 four months after the complaint was filed in the instant action on June 29, 2011 and after Defendant moved to dismiss the instant complaint on October 5, 2011.  The Assignment states that it applies retroactively from July 22, 2008 and is therefore a *nunc pro tunc* assignment.  *See* [Dkt. #22, Attach 1].  The Assignment expressly provides that that the Assignor assigned, sold, transferred and set over to

Assignee, "the entire right, title and interest in and to the invention in the United States of America (including the right to sue for past infringement)." [*Id.*].

If Defendant is correct that Plaintiff lacked standing to bring suit for the infringement of the patent this Court would lack subject matter jurisdiction. *See Gerber Scientific Intern., Inc. v. Satisloh AG, Satisloh North America, Inc.*, Civ.No.3:08CV1382(PCD), 2009 WL 2869705, at *3 (D. Conn. Sept. 2, 2009). Contrary to Plaintiff's erroneous contention, the Federal Circuit has explained that "whether a party has standing to assert the jurisdiction of a federal court is a question of federal law, and 'standing is to be determined as of the commencement of suit.'" *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1308 (Fed. Cir. 2003) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n.5 (1992)).  "[I]n a motion to dismiss on the basis of standing, the district court may engage in fact-finding to determine whether jurisdiction exists and may dismiss a facially sufficient complaint for lack of subject-matter jurisdiction if the court finds, based on affidavits or other evidence outside the complaint, that the asserted basis for federal jurisdiction is not sufficient." *Leighton Tech. LLC v. Oberthus Card Sys., S.A.*, No.04Civ.2496(CM), 2007 WL 2230157, at *4 (S.D.N.Y. July 11, 2007).  "As in any case requiring determination of Article III standing, once the defendants' motion put the plaintiff's Article III standing in issue, the court has discretion to fashion the appropriate method for determining the question of standing." *Id.*

"[I]n order to assert standing for patent infringement, the plaintiff must demonstrate that it held enforceable title to the patent *at the inception of the*

*lawsuit.*" *Paradise Creations*, 315 F.3d at 1309 (emphasis in the original). "Standing is a constitutional prerequisite to the Court's subject matter jurisdiction, and the party asserting standing bears the burden of proof." *Tyco Healthcare Group LP v. Ethicon Endo Surgery*, Inc., 531 F.Supp.2d 282, 283-84 (D. Conn. 2008).  Moreover "[o]nly a 'patentee' -a term which includes 'the patentee to whom the patent was issued [and] also the successors in title,' is a proper plaintiff in a patent infringement case." *Id.* (quoting 35 U.S.C. §100(d)).

It is well established that "[a] court may exercise jurisdiction only if a plaintiff has standing to sue on the date it files suit." *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010).  It is a "longstanding principle that the jurisdiction of the Court depends upon the state of things at the time of the action brought." *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993) (internal quotation marks and citation omitted).  The Federal Circuit has explained that "[b]ased upon this Supreme Court jurisprudence, we have held that in a patent infringement action, the plaintiff must demonstrate that it held enforceable title to the patent at the inception of the lawsuit to assert standing." *Abraxis*, 625 F.3d at 1364.

Therefore, "'if the original plaintiff lacked Article III initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured' after the inception of the lawsuit." *Id.* (quoting *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005)).  Here Plaintiff has submitted with its opposition to the motion to dismiss a copy of the Assignment from Mr. Chung to itself which was executed after the instant lawsuit had been filed and in an

obvious attempt to cure the blatant jurisdictional defect.  *See* [Dkt. #22, Attach 1].

It is clear from the face of the Assignment that Plaintiff did not have standing to

sue on October 5, 2011 when it filed the instant lawsuit since the Assignment was

executed four months later on November 1, 2011.  Courts have routinely

dismissed complaints for lack of standing where the purported assignee did not

have title to the asserted patents on the date it filed the action.  *See e.g., Lans v.*

*Digital Equip. Corp.*, 252 F.3d 1320, 1238 (Fed. Cir. 2001) (affirming dismissal and

denial of motion to amend pleadings to substitute assignee as plaintiff where

plaintiff had already assigned title to the patent prior to the inception of the

lawsuit); *Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1572 (Fed. Cir.

1997) (holding that assignor lacked standing because it had not succeeding in

rescinding or cancelling its assignment in state court prior to filing its complaint

in federal court).

The Federal Circuit has also expressly held that a Plaintiff may not cure its

jurisdictional defect by executing a *nunc pro tunc* assignment after the filing of

the complaint.  *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed.

Cir. 1998) (holding that "nunc pro tunc assignments are not sufficient to confer

retroactive standing").   The Federal Circuit has explained that

> As a general matter, parties should possess rights before seeking to
> have them vindicated in court.  Allowing a subsequent assignment to
> automatically cure a standing defect would unjustifiably expand the
> number of people who are statutorily authorized to sue.  Parties
> could justify the premature initiation of an action by averring to the
> court that their standing through assignment is imminent.
> Permitting non-owners and licensees the right to sue, so long as
> they eventually obtain the rights they seek to have redressed, would
> enmesh the judiciary in abstract disputes, risk multiple litigation, and

> provide incentives for parties to obtain assignment in order to expand their arsenal and the scope of litigation.  Inevitably, delay and expense would be the order of the day.

*Id*. at 1093-94 (*quoting Procter & Gamble Co. v. Paragon Trade Brands, Inc.*, 917 F.Supp. 305, 310 (D.Del.1995)); *See also, Abraxis*, 625 F.3d at 1366-67 (holding that the execution of a *nunc pro tunc* assignment nearly eight months after the filing of the complaint from a parent to its subsidiary did not confer standing as plaintiff was "required to have legal title to the patents on the day it filed the complaint and that requirement can not be met retroactively."); *Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 779-80 (Fed. Cir. 1996) (finding that *nunc pro tunc* assignment executed on October 24, 1994 but made affective as of August 4, 1991, prior to plaintiff's filling of the instant suit was not sufficient to confer standing retroactively), *as amended on rehearing on different grounds*, 104 F.3d 1296 (Fed. Cir. 1996); *Messagephone, Inc. v. SVI Systems, Inc.*, No. 99-1471, 99-1478, 2000 WL 1141046, at *3 (Fed. Cir. 2000) (noting that this "court's precedent clearly establishes that a *nunc pro tunc* assignment executed after filing of a lawsuit cannot retroactively cure standing that was deficient at the time of filing.").  Therefore it is of no consequence to the Court's analysis on standing that Plaintiff in the instant case executed a retroactive or a *nunc pro tunc* assignment after the complaint was filed.

Plaintiff has failed to carry its burden to demonstrate that it held enforceable title to the patent at the inception of the lawsuit to assert standing. Moreover, the fact that Plaintiff executed a *nunc pro tunc* Assignment on November 1, 2011 after the complaint was filed on October 5, 2011 cannot retroactively cure standing that was deficient at the time the complaint was filed.

Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's patent infringement claim.

### Analysis of Trade Dress Infringement Claim

Plaintiff asserts a federal unfair competition claim under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), alleging that Defendant has infringed Plaintiff's unregistered trade dress.  Trade dress "originally included only the packaging or dressing of a product, but it has been expanded to encompass … the design or configuration of the product itself."  *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 114 (2d Cir. 2001).  Here, Plaintiff's claimed trade dress involves product design.

"The Second Circuit has enunciated the four pleading requirements for a claim of trade dress infringement involving the appearance of a product under section 43(a) of the Lanham Act: (1) plaintiff must allege 'the claimed trade dress is non-functional;' (2) plaintiff must allege 'the claimed trade dress has secondary meaning;' (3) plaintiff must allege 'there is a likelihood of confusion between the plaintiff's good and the defendant's;' and (4) plaintiff must 'offer 'a precise expression of the character and scope of the claimed trade dress.' "  *Nat'l Lighting Co., Inc. v. Bridge Metal Indus., LLC*, 601 F.Supp.2d 556, 560-61 (S.D.N.Y. 2009) (quoting *Sherwood 48 Assoc. v. Sony Corp. of America*, No.02-9100, 2003 22229422, at *2 (2d Cir. Sept. 29 2003); *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997)).

"[C]ourts have been reluctant to extend trade dress protection to a product's design (as opposed to its packaging) and to an entire line of products

(as opposed to a single product)." *Id.*  In analyzing trade dress claims, the Second Circuit has urged that "courts must not lose sight of the underlying purpose of the Lanham Act, which is protecting consumers and manufacturers from deceptive representations of affiliation and origin." *Landscape Forms, Inc.*, 113 F.3d at 375.  The Second Circuit has further explained that the trade dress "analysis requires courts to balance the policy of protecting consumers from confusion against that in favor of free competition" and that the "policy of protecting competition is at least as strongly implicated when ... product designs or configurations are claimed as trade dress.   While trademarking a generic term would create a monopoly in a necessary word or phrase, granting trade dress protection to an ordinary product design would create a monopoly in the goods themselves.  For this reason, courts have exercised particular 'caution' when extending protection to product designs." *Id.* 377, 380 (internal quotation marks and citations omitted).  Therefore, trade dress protection for product design "entails a greater risk of impinging on ideas as compared with protection of packaging or labeling."  *Yurman*, 262 F.3d at 116.

     i.     ***Plaintiff has failed to allege that its trade dress is non-functional***

     Plaintiff bears the burden of proving non-functionality and "there is a 'statutory presumption that features are deemed functional until proved otherwise by the party seeking trade dress protection.'"  *Telebrands Corp. v. Del. Laboratories, Inc.*, 719 F.Supp.2d 283, 296-97 (S.D.N.Y. 2010) (quoting Trafix Devices, Inc. v. Marketing Displays, Inc., 532 U.S. 23, 30 (2001)).  Failure to plead non-functionality is fatal to a trade dress claim.  *Id.*

"A product feature is functional, and cannot serve as a trademark, if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *Yurman Design*, 262 F.3d at 116 (internal quotations omitted).  "[I]n cases involving an aesthetic feature, the dress is also functional if the right to use it exclusively would put competitors at a significant non-reputation-related disadvantage.  Thus, the nonfunctionality requirement protects competition even at the cost of potential consumer confusion."  *Id.*

The Second Circuit has emphasized that the "test of nonfunctionality in trade dress claims that are based on product design is even more critical than in trade dress claims based on packaging, because a monopoly right in the design of the product itself is more likely to preclude competition" and  "[a]s with the overbreadth element, '[r]igorous application' of the requirement of nonfunctionality is necessary 'to avoid undermining the carefully circumscribed statutory regimes for the protection of useful and ornamental designs under federal patent and copyright law.'"  *Id.* (quoting Restatement (Third) of Unfair Competition § 16 cmt.b at 158); *See* also Restatement (Third) of Unfair Competition §17 cmt. c (1995) ("A design is functional because of its aesthetic value only if it confers a significant benefit that cannot practically be duplicated by the use of alternative designs.").  The Second Circuit's concern in this regard reflects the Supreme Court's insistence that "[c]onsumers should not be deprived of the benefits of competition with regard to the utilitarian and esthetic purposes that product design ordinarily serves by a rule of law that facilitates

plausible threats of suit against new entrants based upon alleged inherent distinctiveness."  *Wal-Mart Stores v. Samara Bros.*, 529 U.S. 205, 213-213 (2000).

Here, Plaintiff has failed to plead in its complaint that any of the specific elements it is claiming trade dress for are non-functional.  Instead, Plaintiff conclusorily alleges that its product's "sculptural configuration and/or other non-functional design features, is a protectable trade dress under §43(a) of the Lanham Act, which has been infringed by Defendant."  [Dkt. #1, Compl. at ¶19].  Such an allegation is nothing more than a mere label and conclusion or a "formulaic recitation of the elements of the cause of action" devoid of factual content from which such a legal conclusion could be drawn that will not pass muster under *Iqbal*. 129 S. Ct. at 1949.  In fact, many of the elements Plaintiffs alleges are a part of its trade dress are undeniably functional such as the "plastic handle" and the "four wire chrome legs with curved feet."  See [Dkt. #1, Compl. at ¶21].  Accordingly, Plaintiff's conclusory allegation that its trade dress is nonfunctional cannot rebut the statutory presumption that features are deemed functional until proved otherwise by the party seeking trade dress protection.  See *Telebrands*, 719 F.Supp.2d at 298 ("Since Telebrands has failed to plead an essential element of a federal unfair competition claim under § 43(a) of the Lanham Act-defendants' motion to dismiss Count III is granted.").  The failure to plead non-functionality with factual particularityestablishes merely the possibility and not the plausibility of and is therefore fatal to Plaintiff's trade dress claim.

ii.      *Plaintiff has failed to allege its trade tress has secondary meaning*

Plaintiff's trade dress claim also fails due to its failure to plausibly plead that its trade dress has secondary meaning. "To merit legal protection, a product's trade dress must be both sufficiently distinctive to distinguish its mark from those of others and nonfunctional." *Blumenthal Distributing, Inc. v. Executive Chair, Inc.*, No.CV-10-1280, 2010 WL 5980151, at *7 (E.D.N.Y. Nov. 9, 2010).  "To establish that its trade dress is distinctive, then, a plaintiff must make the additional showing that its design has acquired secondary meaning in the marketplace by which it is identified with its producer or source." *Id.* (internal quotation marks and citation omitted).

 "The secondary meaning analysis considers whether the purchasing public associates [the] dress with a single producer of source rather than just with the product itself." *Blumenthal*, 2010 WL 5980151, at *8 (internal quotation marks and citation omitted).  "In determining secondary meaning, courts consider: (1) plaintiff's advertising expenditures, (2) consumer surveys, (3) sales success, (4) unsolicited media coverage, (5) attempts to plagiarize the trade dress, and (6) the length and exclusivity of plaintiff's use of the dress." *Id.* (citations omitted).  "[N]o single factor is determinative, and every element need not be proved." *L. & J.G. Sitckley, Inc. v. Canal Dover Furniture Co., Inc.*, 79 F.3d 258, 263 (internal quotations and alterations omitted).

Plaintiff has failed to plead facts regarding secondary meaning that would state a claim to relief that is plausible on its face.  Plaintiff has not asserted facts relating to consumer surveys, sales success, marketing expenditures, media coverage or the length and exclusivity of its use of the dress.  As the Defendant

points out, Plaintiff fails to even sufficiently identify in the complaint the product in which it contends it has acquired trade dress.  The Plaintiff merely alleges in its complaint that it "has used and continues to use its distinctive Trade Dress and, by virtue of widespread sales, the Trade Dress has come to indicate origin with Plaintiff" and that it "has incurred great expense and has devoted substantial resources to make the barbeque grill famous and/or readily recognizable to consumers.  Plaintiff's investments and efforts have been successful as the Trade Dress had become highly distinctive in the marketplace and denotes to purchasers a line of goods which originate with Plaintiff." [Dkt. #1, Compl. at ¶¶ 20, 23].   Since allegations that lack factual enhancement sufficient to identify the product at issue, the Court is unable to draw the reasonable inference that Plaintiff's claimed trade dress has acquired secondary meaning.  Affording the Plaintiff an opportunity to amend the complaint to identify the product would be futile for the reasons stated in the following section.

       iii.    *Plaintiff has not offered a precise expression of the character and scope of the claimed trade dress*

However "even a showing of secondary meaning is insufficient to protect product designs that are overbroad or generic."  *Yurman*, 262 F.3d at 115 (internal quotation marks and citation omitted). "[A] generic product design refers to the 'genus of which the particular product is a species.'"  *Blumenthal*, 2010 WL 5980151, at *7 (quoting *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 32 (2d Cir. 1995)).  Accordingly, "[a] producer, for example, cannot claim trade dress protection in the basic design of a men's shirt or the general configuration of a baseball cap." *Id.* (citing *Abercrombie & Fitch Stores, Inc. v. Am. Eagle*

*Outfitters, Inc.*, 280 F.3d 619, 639 (6th Cir. 2002)).  "First, trade dress law, much like the law of copyright, does not protect an idea, concept, or generalized type of appearance.  Second, the law of trade dress does not permit a designer to gain a monopoly on designs regarded by the public as the basic form of a particular item."  *Id.* (internal quotation marks and citations omitted).  Therefore "overextension of trade dress protection can undermine restrictions in copyright and patent law that are designed to avoid monopolization of products and ideas." *Jeffery Milstein*, 58 F.3d at 32.  Moreover, "[t]he level of generality at which a trade dress is described, as well as the fact that a similar trade dress is already being used by manufacturers of other kinds of products, may indicate that the dress is no more than a concept or idea to be applied to particular products."  *Id.* at 33.

Accordingly, Plaintiff must articulate the "elements of their product design with specificity to be afforded trade tress protection."  *Shevy Custom Wigs, Inc. v. Aggie Wigs*, No. 06cv1657(JG), 2006 WL 3335008, at *4 (E.D.N.Y. Nov. 17, 2006). Although "there is no question that trade dress may protect the 'overall look' of a product" since "each element of a trade dress individually might not be inherently distinctive … the combination of elements may be indicative of source." *Landscape Forms*, 113 F.3d at 381 (internal quotation marks and citation omitted).  However, "focus on the overall look of a product does not permit a plaintiff to dispense with an articulation of the specific elements which comprise its distinct dress. Without such a precise expression of the character and scope of the claimed trade dress, litigation will be difficult, as courts will be unable to evaluate how unique and unexpected the design elements are in the relevant

market.  Courts will also be unable to shape narrowly-tailored relief if they do not know what distinctive combination of ingredients deserves protection. Moreover, a plaintiff's inability to explain to a court exactly which aspects of its product design(s) merit protection may indicate that its claim is pitched at an improper level of generality, i.e., the claimant seeks protection for an unprotectable style, theme or idea."  *Id.*

Here, the description of Plaintiff's claimed trade dress is likely overbroad and generic.  Plaintiff alleges that its trade dress includes the "shiny exterior comprised of a rounded trapezoidal shaped lid on top, with a plastic handle and a rounded trapezoidal base pan at the bottom.  The entire grilling unit is secured on top of four wire chrome legs with curved feet."  [Dkt. #1, Compl. at ¶20]. Accordingly, Plaintiff's claimed trade dress seeks protection for what appears to be the basic design or general configuration of a generic portable grill.  If the Court were to grant trade dress protection to what is essentially an "ordinary product design" that would create a "monopoly in the goods themselves." *Landscape Forms*, 113 F.3d at 380.

Plaintiff further alleges it is entitled to  trade dress protection because its "lid also has three cartouche-shaped opening / cutouts in series on its left and right sides and four additional cutouts on the back arranged in parallel with two cutouts in each row.  The base pan also has similar cutouts with two such openings on the left and also on the right side.  The lid also has a sheet metal plate attached in the back imprinted on which, is technical information regarding the burner and its proper use."  However, such a "laundry list of the elements that

constitute a design" is insufficient to show distinctiveness, *Nat'l Lighting*, 601 F.Supp.2d at 562.  Further, Plaintiff fails to allege how this laundry list of features is distinctive.  *Shevy Custom Wigs*, 2006 WL 3335008, at *5 (granting motion to dismiss trade dress claim stating that "[t]he issue is not just *which* features are distinctive, but also *how* they are distinctive") (emphasis in original).  The Court also notes that a trade dress claim cannot be "rescued by the mere attachment of brochures, photographs and specifications to the Amended Complaint" as "courts cannot  be expected to distill from a set of images those elements that are common to a line of products and both distinctive and non-functional."  *Nat'l Lighting*, 601 F.Supp.2d at 562-63.  Plaintiff's broad and general assertions of trade dress protection for essentially the entire design of its grill "indicate[s] that the dress is no more than a concept or idea to be applied to particular products."  *Jeffrey Milstein*, 58 F.3d at 33.  Accordingly, Plaintiff has failed to articulate the required precise expression of the character and scope of the claimed trade dress.

      iv.    *Plaintiff has failed to allege there is a likelihood of confusion between the Plaintiff's goods and the Defendant's*

      Lastly, Plaintiff's trade dress claim also fails because he has failed to plausibly allege likelihood of confusion.  Courts apply the factors articulated in *Polaroid Corp. v. Polarad Elec.*, 287 F.2d 492, 495 (2d Cir. 1961) to assess likelihood of confusion.  These factors include: "(1) the strength of the plaintiff's mark or dress; (2) the similarity between the two marks or dresses; (3) the proximity of the products in the marketplace; (4) the likelihood that the prior owner will bridge the gap between the products; (5) evidence of actual confusion;

(6) the defendant's bad faith; (7) the quality of defendant's product; and (8) the sophistication of the relevant consumer group." *Blumenthal*, 2010 WL 5980151, at *10 (citing *Paddington Corp. v. Attiki Imps. & Distrib., Inc.*, 996 F.2d 577, 584 (2d Cir. 1993)). "The *Polaroid* factors are not an exhaustive list of relevant considerations, and must not be applied mechanically. Rather, a court should focus on the ultimate question of whether consumers are likely to be confused." *Id.* (internal quotation marks and citation omitted).

Plaintiff conclusorily alleges that Defendant "has used and continues to use derivatives, and/or colorable imitations of Plaintiff's Trade Dress in direct competition with Plaintiff…in a manner that is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods." [Dkt. #1, Compl. at ¶25]. Plaintiff also conclusorily alleges that Defendant's grills "are of inferior quality" [*Id.* at ¶21]. Again such allegations are at best "naked assertion[s] devoid of further factual enhancement," *Iqbal*, 129 S. Ct. at 1949, and therefore do not allow the Court to draw the reasonable inference that there is a likelihood of confusion. Plaintiff fails to provide further factual enhancement such as facts regarding the strength of the dress, the proximity of the products in the marketplace, evidence of actual confusion, Defendant's bad faith or the sophistication of the relevant consumer group. Since Plaintiff has failed to allege facts with respect to all four essential elements of a trade dress claim which would allow the Court to draw the reasonable inference that Defendant infringed Plaintiff's trade dress, Defendant's motion to dismiss Plaintiff's trade dress claim is granted.

## Conclusion

Based upon the above reasoning, the Defendant's [Dkt. #14] motion to dismiss the complaint is GRANTED.  The Clerk is directed to close the case.

IT IS SO ORDERED.

_____/s/_____

Hon. Vanessa L. Bryant

United States District Judge


Dated at Hartford, Connecticut: April 13, 2012